2010 Ark. App. 194

**Janice NICHOLS, Appellant**

v.

**OMAHA SCHOOL DISTRICT,
Appellee.**

**No. CA 09–919.**

Court of Appeals of Arkansas.

Feb. 24, 2010.

Tolley & Brooks, P.A., Fayetteville, by: Evelyn Elizabeth Brooks, for appellant.

Bassett Law Firm LLP, Fayetteville, by: Curtis L. Nebber, for appellee.

COURTNEY HUDSON HENRY, Judge.

|1Appellant Janice Nichols appeals the decision of the Arkansas Workers' Compensation Commission denying her claim for additional medical benefits. For reversal, she challenges the Commission's finding that she failed to sustain her burden of proving that additional medical treatment was reasonable and necessary for the treatment of her compensable injury. We affirm.

On October 1, 2004, appellant was working as an elementary school teacher for appellee, the Omaha School District, when she sustained a work-related injury to her left shoulder while moving a folding screen. Appellant saw Dr. Terry Sites for an orthopedic evaluation on October 18, 2004. His impression was "left shoulder rotator cuff strain/possible tendinopathy and chronic periscapular pain associated with fibromyalgia." |2Appellant underwent an MRI on October 26, 2004, and the report stated "there is at least a partial tear involving the anterior aspect of the supraspinatus tendon. A very minimal amount of fluid is present in the subacromial and the subdeltoid bursa regions. The presence of a small focal full thickness tear cannot be completely excluded."

Appellant returned to Dr. Sites on October 28, 2004, and he wrote that the MRI was consistent with rotator cuff tendinopathy and possibly a small tear. He also opined that appellant's longstanding fibromyalgia confused the clinical interpretation. Dr. Sites administered a subacromial injection that provided appellant no immediate relief.

Appellant next came under the care of a shoulder specialist, Dr. Pat O'Brien. On December 30, 2004, he performed surgery on appellant's left shoulder in the form of an open acromioplasty. Dr. O'Brien's postoperative diagnosis was Stage II impingement of the left shoulder with anterior osteophyte and significant subacromial scarring. During the procedure, he found that appellant's rotator cuff was bruised but not torn.

Appellant received follow-up treatment from Dr. O'Brien. He again assessed appellant as having impingement syndrome of the shoulder and ordered physical therapy. Dr. O'Brien issued appellant a conditional work release on March 16, 2005. In June 2005, he noted that appellant had multiple trigger points in her trapezius muscle bilaterally and tenderness over the AC joint that he attributed to fibromyalgia. He then referred appellant to a fibromyalgia clinic.

|3On September 28, 2005, Dr. O'Brien reported that appellant had achieved maximum medical improvement. Appellee paid all medical expenses for the treatment of appellant's shoulder, as well as benefits for a three-percent impairment rating.

On June 26, 2007, appellant saw Dr. Kevin Jackson, her family physician, with complaints of pain in her left shoulder, neck, and chest. Appellant returned to Dr. Jackson on November 2, 2007, and January 28, 2008, with complaints of shoulder pain. Dr. Jackson's assessment was "joint pain shoulder." At a visit on July 22, 2008, Dr. Jackson reported that x-rays of appellant's left shoulder revealed no evidence of fracture or dislocation.

Thereafter, appellant filed a claim for additional benefits for the treatment of her then-existing shoulder problem. At the hearing before the administrative law judge, appellant testified that her shoulder improved following surgery but that she continued to have problems with her shoulder popping and grinding with movement. She stated that there were times when the muscles of her shoulder would tighten and go into spasm and that, on those occasions, Drs. O'Brien and Jackson recommended that she wear a sling. Appellant testified that Dr. Jackson also prescribed pain medication and muscle relaxants, and she said that she sleeps with a heating pad and uses a TENS unit and an RS Medical Unit on her shoulder. On cross-examination, appellant acknowledged that she has had fibromyalgia for twenty years.

⊥4Appellant also testified that she did not return to Dr. O'Brien after August 2005 because he had retired. She introduced into evidence a September 5, 2007, letter that her attorney had written to appellee's counsel requesting the name of another doctor who treated shoulders.

After reviewing the evidence, the law judge denied appellant's claim, finding that she had failed to prove that additional medical treatment was reasonably necessary in connection with her compensable injury. The law judge noted that appellant did not seek treatment for shoulder problems from August 2005 to June 2007 or mention a shoulder problem to any physician, although she received extensive medical services for other maladies during that period of time. Based on this two-year gap without documented medical complaints regarding the shoulder, the law judge found that she would be required to speculate as to whether appellant's current shoulder problems were causally related to her compensable injury.[1] On appeal to the Commission, a majority of the commissioners affirmed and adopted the law judge's opinion. This appeal followed.

For reversal, appellant argues that substantial evidence does not support the Commission's decision. She contends that the record would support a finding that her current problems are related to her compensable injury because she had no problems with her ⊥5shoulder before the accident and because she has continued to have problems since it occurred. She also asserts that there is no other explanation as to the cause of her pain. Further, appellant argues that it is appellee's responsibility to provide treatment to determine the source of her pain and that she does not have the burden of proof because an employer is responsible for providing treatment for any natural consequences that flow from a compensable injury.

Arkansas Code Annotated section 11–9–508(a) (Supp.2009) requires an employer to provide an injured employee such medical services "as may be reasonably necessary in connection with the injury received by the employee." However, the employee has the burden of proving by a preponderance of the evidence that med-

1. For reasons that are not clear, the appellee failed to assert the defense that appellant's claim was barred by the statute of limitations found in Arkansas Code Annotated section 11–9–702(b) (Supp.2009).

ical treatment is reasonable and necessary. *Stone v. Dollar Gen. Stores,* 91 Ark.App. 260, 209 S.W.3d 445 (2005). What constitutes reasonable and necessary medical treatment is a question of fact to be determined by the Commission. *Bohannon v. Walmart Stores, Inc.,* 102 Ark.App. 37, 279 S.W.3d 502 (2008).

It is also a familiar rule of law that, when the primary injury is shown to have arisen out of and in the course of employment, the employer is responsible for any natural consequence that flows from that injury. *K II Constr. Co. v. Crabtree,* 78 Ark.App. 222, 79 S.W.3d 414 (2002). However, for this rule to apply, the basic test is whether there is a causal connection between the injury and the consequences of such. *Id.* The burden is on the ⊥6employee to establish the necessary causal connection. *Crudup v. Regal Ware, Inc.,* 341 Ark. 804, 20 S.W.3d 900 (2000).

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.,* 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Dorris v. Townsends of Ark., Inc.,* 93 Ark.App. 208, 218 S.W.3d 351 (2005). Where the Commission denies a claim because of the claimant's failure to meet her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Kimbell, supra.*

In the present case, appellant is experiencing what her family physician has assessed as "joint pain" in her shoulder. Contrary to appellant's assertion, she has the burden of proving that the pain in her shoulder stems from her compensable injury in order for additional treatment to be considered reasonable and necessary. *See Crudup, supra; Stone, supra.* In her testimony, appellant attributed her current shoulder problems to the compensable injury. However, the determination of the credibility and weight to be given a witness's testimony is within the sole province of the Workers' Compensation Commission, ⊥7and the Commission is not required to believe the testimony of the claimant or any other witness. *Believ v. Lennox Indus.,* 2010 Ark.App. 112, 2010 WL 374407. Otherwise, the record contains no evidence explaining the etiology of appellant's current symptoms. While appellant's pain might possibly be attributed to the compensable injury, the evidence does not compel that conclusion. It is also plausible that her pain is related to some other cause, such as appellant's well-documented diagnosis of fibromyalgia. Because of the uncertainty in the record and the two-year gap when appellant did not seek treatment for her shoulder, the Commission found that it could only speculate that appellant's current complaints were related to her compensable injury. Based on our review, we hold that the Commission's decision displays a substantial basis for the denial of relief. Accordingly, we affirm.

Affirmed.

KINARD, GRUBER, GLOVER, and BROWN, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting.

Janice Nichols asserts that she is entitled to additional medical services in the form of seeing a shoulder specialist in

connection with her compensable left-shoulder injury. The relevant statute provides that an "employer shall promptly provide for an injured employee such medical ... services ... as may be reasonably necessary in connection with the injury received by the employee." Ark.Code Ann. § 11-9-508(a)₈ (Supp.2009)<CARET>. In making its decision, the Commission failed to consider the elements of this statute, and consequently, we should reverse and remand.

In denying medical services, the administrative law judge (ALJ) noted that after seeing her orthopedic surgeon on August 24, 2005, Nichols did not seek treatment for her shoulder until June 26, 2007, "almost a two-year gap in treatment for her shoulder." The ALJ concluded that, given the two-year gap and the absence of medically documented complaints of shoulder problems during that time, "it would require conjecture and speculation to causally link the claimant's current shoulder problems to her work incident."

In relying solely on this "two-year gap" to deny benefits, the Commission failed to consider the elements of the statute. It seems self-evident that the Commission should have considered the latest medical records to determine whether Nichols needed "medical services" in the form of a visit to a specialist, whether such a visit was "reasonably necessary," and whether such a visit would be "in connection with" the injury, but the Commission did not do so. Those medical records showed in part that Nichols went to her family physician complaining of left-shoulder pain and that she was prescribed medications, assessed as having joint pain, and given an "ortho referral." Also, a letter from her attorney to Omaha School District indicated that Nichols sought authorization for treatment from a "shoulder specialist," as her orthopedic surgeon had "retired."

[9]In previous cases, gaps in medical treatment were not dispositive on this question. *See Huckabee v. Wal–Mart, Inc.,* 104 Ark.App. 22, 289 S.W.3d 107 (2008) (seeking medical services in the form of monitoring the injury); *Wal–Mart Stores, Inc. v. Brown,* 82 Ark.App. 600, 120 S.W.3d 153 (2003) (seeking medical services in the form of a visit to a new physician). I note that the Omaha School District apparently waived a statute-of-limitations defense to the claim by failing to plead it. Ark.Code Ann. § 11–9–702(e) (Supp.2009). The Commission, in essence, brought the defense in through the back door.

Finally, we should not provide the Commission with an analysis it did not provide, as our review is not de novo, but instead whether substantial evidence supports the Commission's findings. *See, e.g., Sonic Drive–In v. Wade,* 36 Ark.App. 4, 816 S.W.2d 889 (1991). Perhaps more guidance is needed from the appellate courts.